IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

POLLY A. WILSON,

          Plaintiff,

        vs.                                Case No. 07-1147-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

Plaintiff Polly Wilson has applied for Social Security disability insurance and supplemental income benefits. The ALJ denied her applications on October 12, 2005, a decision affirmed by the Appeals Council on March 26, 2007. There are two allegations of error – that the ALJ's decision was not predicated on correct rules of law, and that it is not supported by substantial evidence.

Plaintiff-claimant Wilson was born in 1964. She has stated that she became disabled beginning June 26, 1998. She has a high-school equivalent education, and has worked as a hospital cleaner, dry cell battery assembler, short order cook, and phlebotomist. She has cited a variety of ailments including depression, anxiety, personality disorder, and pain in the neck, head, arms, lower back, and bowels. The detailed facts of the case, which are incorporated herein, are set forth

independently in the ALJ's opinion (Tr. 18-26), and set forth *seriatim* in the argument sections of

the briefs of the parties.   (Dkt.  No's 14, 21).

The ALJ concluded that Wilson has severe impairments as to degenerative disk disease,

mitral valve prolapse, a history of carpal tunnel, depression, personality disorder, somatoform

disorder and methamphetamine abuse.  He found that her impairments, singly or in combination, did

not meet or exceed any listed impairment. (Tr. 22). He then found that Wilson had the RFC to lift

or carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight hour workday,

and stand for an equivalent time. (Tr. 23). He noted mental limitations as well:

> Mental limitations include moderate limitations in the ability to understand,
> remember, and carry out detailed instructions; maintain attention and concentration
> for extended periods; interact appropriately with the general public; and get along
> with coworkers or peers without distracting them or exhibiting behavioral extremes.

*Id.*

The Commissioner determines whether an applicant is disabled pursuant to a five-step

sequential evaluation process (SEP) pursuant to 20 C.F.R.  §§ 404.1520 and 416.920.  The applicant

has the initial burden of proof in the first three steps:  she must show whether she is engaged in

substantial gainful activity, she has a medically-determinable, severe ailment, and whether that

impairment matches one of the listed impairments of 20 C.F.R.  pt.  404, subpt P., app.  1.  *See Ray*

*v.  Bowen*, 865 F.2d 222, 224 (10th Cir.  1989).   If a claimant shows that she cannot return to her

former work, the Commissioner has the burden of showing that she can perform other work existing

in significant numbers in the national economy.  20 C.F.R.  § 404.1520(f).  *See Channel v.  Heckler*,

747 F.2d 577, 579 (10th Cir.  1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C.  405(g) of the Social Security Act.   Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v.  Shalala*, 21 F.3d 983, 984 (10th Cir.  1994).

Substantial evidence means more than a scintilla, but less than a preponderance.  It is satisfied by evidence that a reasonable mind might accept to support the conclusion.  The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion*.  Ray*, 865 F.2d at 224.   The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v.  Sullivan*, 794 F.  Supp.  1045, 1047 (D.  Kan.  1992).   The court will not reweigh the evidence nor prefer its judgment for the agency's judgment*.  White v.  Barnhart*, 287 F.3d 903, 905 (10th Cir.  2001).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law.  Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v.  Bowen*, 816 F.2d 508, 512 (10th Cir.  1987).

The ALJ determined that Wilson suffered from severe impairments of depression, personality disorder, somatoform disorder, and methamphetamine abuse.  Wilson contends that the ALJ erred in failing to also find that she suffered from severe impairments from a psychotic disorder and myofascial pain syndrome. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. *See Hinkle v.  Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); 20 C.F.R.  § 404.1521(a) (2007).  The impairment need only make a minimal impact on

work-related abilities, but the severity standard is not "toothless." *See Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

Wilson claims that the ALJ erred in stating that Dr. April McVey's opinion was possibly related to myofascial pain syndrome, but that she actually had it, Tr. 683, that the same condition was noted by Dr. Frederick Smith, and McVey's caution to Wilson that she would probably not receive social security benefits for her condition is a legal opinion without any weight.

The court finds no error. While Dr. McVey's opinion that the Social Security Administration would not approve benefits carries little weight, it is also apparent that the fact is simply mentioned in passing in the ALJ's opinion (Tr. 20); it was clearly not dispositive. More important was the recognition that the *possibility* of myofascial pain syndrome was inherent in Dr. McVey's report, even if the word itself is not used: she reports that "I believe that this patient has myofascial pain syndrome" while simultaneously acknowledging that all of the neurological and electrodiagnostic tests conducted failed to show "any objective abonormalities." (Tr. 683). Dr. Smith later reported under "CLINICAL IMPRESSION" that Wilson appeared to have myofascial pain syndrome, but he merely "advised [Wilson] on relaxation exercises." (Tr. 574).

However, even acknowledging the existence of some evidence in the record supporting a finding of impairment or (Dr. Tan's evaluation in October, 2003 (Tr. 376)) of psychotic disorder, substantial evidence supports the ALJ's determination that these impairments have not been shown to have a substantial impact on the plaintiff's ability to function. More importantly, the ALJ's opinion incorporates consideration of all of Wilson's impairments, whether severe or not severe, in reaching the conclusion that Wilson retained the RFC to perform her prior work. Consistent with 20 C.F.R. §§ 404.1523, 416.923 (2007), the ALJ explicitly considered "all symptoms" of Wilson

in reaching his ultimate conclusion as to her RFC. (Tr. 23). The court finds no basis for reversal of

the ALJ's decision at step 2.

Next, Wilson contends that the ALJ erred at step 4, advancing a series of rejoinders to

various findings by the ALJ. She first notes that the ALJ's observation, after noting two prior

denials of benefits as well as apparently unsuccessful medical malpractice and workers compensation

claims, that Wilson "appears to be motivated to receive some type of benefit rather than return to

work," (Tr. 23), and further that she contacted many doctors requesting benefits. She contends that

the first conclusion was unfounded speculation, and the second lacks any citation to the record. The

court finds that the ALJ's observation was a fair conclusion given the general record.

In the first portion of his credibility assessment, the ALJ wrote:

> Overall, the record indicates the ability to perform a range of light work. However, the claimant appears motivated to receive some type of benefit rather than return to work. She has filed claims for malpractice, workers compensation and Social Security disability. This is her third claim for Social Security disability benefits with the prior two claims resulting in medical denials. She has slated that she cannot work because she is in pain but primarily because she needs to stay home with her 9 year old son. The record reflects that she has consulted numerous medical sources with a primary purpose of obtaining disability benefits. Doctors at the Hays Orthopedic Clinic have provided work releases noting the ability to work. Dr. [Victor] Eddy advised the claimant to get her life together and not rely on disability benefits. Although the claimant presented to Dr. McVey in October 2003 requesting a disability statement, he noted that the objective medical evidence was unremarkable and she was probably not eligible for benefits.

(Tr. 23) (exhibit references omitted).

In addition to challenging the general concern that Wilson was focused on obtaining benefits

rather than treatment, the plaintiff challenges this portion of the ALJ's opinion on the grounds she

did not say that the *primary* reason she did not work was the need for child care, but cited both that

and the pain she suffered, without assigning any priority to either cause, and the work release notes

cited by the ALJ (Tr. 573, 582) fail to consider her mental problems and those notes further support a finding of greater physical restrictions than the RFC adopted by the ALJ.

The court finds no error. With respect to the notes of the Hays Orthopedic Clinic treatment (Tr. 567 and following) and those of Dr. Eddy (Tr. 599 and following), the ALJ appropriately here noted these not as a final finding as to all of Wilson's limitations, but solely with reference to her credibility as to her claims of disabling pain. The RFC ultimately adopted by the ALJ, while taking careful account of the recommendations from the Clinic, certainly does not exactly mirror those recommended restrictions. But the ALJ cited appropriately those restrictions here as being markedly at variance with Wilson's subjective claims of disabling pain. Dr. Eddy, in the same vein, noted that Wilson "is on a quest for disability, social security and now HUD housing." (Tr. 600). The ALJ would have more accurately noted that both the claim of disabling pain and the need to take care of her child were equally cited as grounds for refusing work, but such a notation would not have altered the conclusion. The court does not find any substantial error in this portion of the ALJ's credibility analysis.

The plaintiff argues that the ALJ erred in stating that the SRS believed that she was capable of working. According to the plaintiff's brief, "[a]ctually, SRS was pressuring Plaintiff to either get a job or get on Social Security. R. 604." (Dkt. No. 14, at 10-11). Thus, plaintiff, contends, the record does not support a conclusion that the SRS actually believed she was capable of work.

The ALJ's actual findings were:

The record reflects that Social Rehabilitation Services (SRS) has instructed the claimant to find work indicating they believe she is capable to work. At the hearing, she stated that she declined the job coach offered by SRS because she does not want to work. The undersigned notes that a desire or need to stay home with a young child does not qualify a person for disability benefits.

(Tr. 24). Certainly, there is some support for plaintiff's requested factual finding. In the referenced part of the record, Wilson apparently told Dr. Eddy in July of 2003 that "she is being pressured by Welfare to get a job or get on Social Security." (Tr. 604). On the other hand, two months earlier, she told Dr. Frederick Smith precisely what the ALJ stated:  that the SRS was pressuring her to "get some kind of employment." (Tr. 576). Further, the plaintiff does not challenge the ALJ's observation that SRS had offered (unsuccessfully) Wilson the services of a job coach, an offer which would be consistent with the conclusion that the agency believed Wilson was capable of employment.

The ALJ discounted the credibility of the plaintiff's statements as to the severity of her pain. The plaintiff contends that this was error because it relied in part on a notation of the absence of objective evidence of pain, and further failed to note the existence of the mental problems otherwise documented in the record, arising from evaluations from 1999 to 2003 (Tr. 407, 716, 374).  The plaintiff notes that under *Luna v. Bowen*, 834 F.2d 161, 166 (10th Cir.  1987) the ALJ should consider the possible combination of psychological disorders and physical problems.

The court finds no error in the ALJ's analytic approach, and concludes that it is supported by substantial evidence.  If the absence of objective indicia of pain was the only element in the ALJ's analysis, this would certainly be grounds for objection to the conclusion that the plaintiff was not credible. But this was not the case. The ALJ noted a variety of considerations, most of which are not mentioned in plaintiff's brief.  The absence of any objective evidence of pain, including the absence of any prescription drugs to manage such pain, was one element, and a legitimate element, in the ALJ's analysis:

> The record also indicates various discrepancies regarding substance abuse. At the hearing, she stated that her substance abuse had been in remission since 2001 with a recent relapse. However, Dr. Bhargava discharged her from treatment in October 2002 because of her continued IV drug use and refusal to stop (exhibit 15F).

On the drug and alcohol questionnaire completed by the claimant in July 2003, she stated that she does not use alcohol and had not used drugs for a year (exhibit 7E). At the consultative examination in December 2003, the claimant denied the use of alcohol (exhibit 30F). However, on October 13, 2003, she reported moderate use of alcohol to Dr. McVey (exhibit 29F). These discrepant statements affect the claimant's credibility.

Additional discrepancies include statements such as the inability to use her hands at the same time reporting that she had written a 15 page letter to the local District Attorney. This statement is also reviewed in connection with the medical records finding unremarkable EMG and NCS. The most recent consultative examination found no atrophy of the hand with normal strength of the handgrip, finger abduction and thumb abduction. She had no sensory loss and a negative Tinel's sign at the wrist (exhibit 30F). At the hearing the claimant testified to the ability to sit 30 minutes, stand 30 minutes and drive no more than 90 minutes. These statements are internally inconsistent. If a person can drive for 90 minutes without stopping, this would include more than 30 minutes of sitting. In addition, the claimant was able to sit throughout the entire hearing which lasted approximately 65 minutes without any position alternation or obvious discomfort. When she left the hearing, there was no appearance of pain.

(Tr. 24) (exhibit references omitted).

Contrary to the suggestion of the plaintiff, the ALJ did note the existence of severe mental impairments. (Tr. 22). He further explicitly based his determination as to Wilson's RFC on all of her symptoms, whether arising from severe or non-severe impairments.

The plaintiff contends that the ALJ erred in finding an inconsistency in her statements that she could sit for only 30 minutes at a time, and her acknowledgment elsewhere in the record that she could drive for more 90 minutes at time. Wilson argues this was an improper comparison, because car seats are adjustable, and "[t]he ALJ did not inquire of Plaintiff how she had her car seat adjusted." (Dkt. No. 14, at 14). The comparison was not error. Certainly car seats are adjustable, so are seats in the home and workplace; the three-fold difference in Wilson's representation and her separate admission are certainly worthy of note. Further, the ALJ separately noted later in his

opinion that Wilson sat without difficulty for "more than an hour" at the hearing. (Tr. 25). The ALJ's credibility assessment as to the issue was not error.

The plaintiff next argues that the ALJ incorrectly noted (Tr. 25) inconsistencies between Dr. Frederick Smith's May, 2003 work release limitations (Tr. 573) and his December, 2003 consultative examination (Tr. 698). She argues that the ALJ substituted his own medical judgment by utilizing the December report, and alternatively suggests that the December evaluations were simply silent as to limitations, without indicating any modification of the earlier assessment.

The court finds that the ALJ did not err in evaluating the evidence.   The ALJ wrote:

> It is also noted that the claimant was released to work by several treating doctors. Dr. Smith provided the claimant a work release in May 2003, with a notation to alternate sitting, standing and walking after 30 minutes. However, this appears to be based on the claimant's subjective symptoms. As noted, she had stated this at the hearing, but was observed to sit without problems for more than an hour. Finally, Dr. Smith then provided a consultative examination on December 2, 2003, finding no significant limitations. She ambulated easily. Straight leg raising was good. Patrick's test was negative. Range of motion was full. She could easily bend forward and squat. She had normal strength in her hands with a negative Tinel's sign at the wrists.

(Tr. 25) (exhibit references omitted).

The reference to the December evaluation was one factor in the ALJ's evaluation, and his summary of the findings of that evaluation (Tr. 698) were accurate, and well as his notation that other doctors had also released Wilson for work.

Wilson argues that the ALJ erred in noting her activities during daily life without also noting her difficulties, and in finding that she needed only 30 minutes a day for rest, while the evidence (taken from her response to a questionnaire) indicated only that she required that long for naps, not just rest. (Dkt. No. 14, at 17). She further contends that the ALJ erred in noting that she could care for her children, when the children had been removed from the house in 1999.

9

The questionnaire asked only if the applicant napped during the day, and Wilson indicated that she did, for at least 30 minutes. (Tr. 133). There is no indication in the response of additional required resting time. In full, the ALJ's evaluation as to Wilson general activities was as follows:

> A review of the daily activities does not indicate significant limitations. The claimant is able to care for herself, her home and her children. She gardens, drives, shops and handle finances. She was able to get out of the house on a daily basis to handle appointments and daily activities. The claimant does take prescription medication. However, the evidence does not indicate that the medication is ineffective or results in any significant side effects. The claimant has reported that the medication can make her tired, but she only requires 30 minutes of rest a day.

(Tr. 24) (exhibit references omitted). The ALJ specifically noted that Wilson takes pain medication and that it has not been shown to be ineffective or have substantial negative side effects. As to the children, they had been removed from the house in 1999, but Wilson fails to provide evidence to demonstrate that this removal was due to her disabilities, as opposed to her methamphetamine addiction otherwise documented in the record.  Further, the children were subsequently returned to the plaintiff, and substantial evidence supports the ALJ's determination that Wilson supplied child care as an important part of her daily life.

Finally, plaintiff complains that the ALJ did not explicitly consider two assessments issued by therapists at High Plains Mental Health Center.  First, plaintiff cites a passage from a September 25, 1999 Referral Report from which states as to Wilson:

> There is a pervasive pattern of interpersonal deficits characterized by impulsivity, poor judgment, many failed romantic relationships, three children by three different fathers, and inability to sustain consistent work behavior.

(Tr. 423-24). Second, she cites Entry Report from August 4, 2003 stating;

> The secondary diagnosis of Personality Disorder Not Otherwise Specified is given as there appears to be a pervasive pattern of interpersonal and cognitive deficits that is of a longstanding nature and has led to problems in the areas of impulse control, work behavior, interpersonal relationships, and self-image.

10

(Tr. 379).

As noted earlier, the ALJ included reference to Wilson's mental impairments in his conclusions. The purpose of the court is not to reweigh the evidence but to determine whether the ALJ followed appropriate legal standards, and to determine if substantial evidence supports the findings reached by the ALJ. Having reviewed the entire record, the court finds that the correct legal standards were applied, and the findings of the ALJ are supported by substantial evidence.

In addition, the court notes the submission of additional information added to the record (Dkt. No. 15) after the final decision of the Commissioner. This information takes the form of a statement from a High Plains Mental Health Center therapist, Ann Young, M.S. LMLP, LCMFT, LCP. The statement was itself prepared by counsel. (Dkt. No. 15-2, at 3). Neither the most recent statement of Ms. Young, nor an earlier attached "To Whom It May Concern" letter evidence any recent treatment of Wilson.  Both reflect a review of Wilson's entire history rather than specific additional clinical findings. Thus, the earlier letter reflects a statement of Wilson's condition as reflected "[t]hroughout her adult life." (Dkt. No.15-3, at 1). The secondary statement is premised on the history of treatment at High Plains "since July 2004." (Dkt. No. 15-2, at 1). The court finds the additional submission fails to qualify is a medical evidence from a treating source and  is not entitled to the weight accorded such evidence. Further, the weight of the evidence is further diminished by the fact that it was created after the ALJ's adverse decision. The additional submission reiterates material already reflected in Wilson's medical history, and justifies neither reversal nor remand of the present matter.

11

IT IS ACCORDINGLY ORDERED this 29th day of September, 2008, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE